UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DOLORES M. ROSE, :
as Administratrix for THE ESTATE : NO.: 3:09-CV-01561
OF EDWARD M. ROSE III, :
Deceased, and DOLORES M. ROSE, : (JUDGE VANASKIE)
Individually, : (MAGISTRATE JUDGE PRINCE)
       Plaintiffs :
:
v. :
:
BARRETT TOWNSHIP; BARRETT :
TOWNSHIP POLICE DEPARTMENT, :
LARRY RAISNER, ROGER BURNS, :
and BARRETT TOWNSHIP :
VOLUNTEER AMBULANCE CORPS, :
INC., :
       Defendants :
:

## **REPORT AND RECOMMENDATION**

Pursuant to an Order entered on May 14, 2010 (Doc. 25), Honorable Thomas Vanaskie referred defendants' pending motions to dismiss plaintiff's complaint, and defendant's motion to dismiss or in the alternative for a more definite statement, to the undersigned Magistrate Judge for the purpose of preparing a Report & Recommendation.

**I. Background**

Plaintiff Dolores M. Rose, personally and in her capacity as administratrix for the estate of Edward M. Rose III, instituted this action against the various defendants on August 14, 2009. (Doc. 1.) Because the Court is now considering motions to dismiss under Rule 12(b)(6), the facts as stated are drawn from the complaint, and assumed to be true for the purposes of the following discussion.

## (A) Facts of this case

On or about August 16, 2007, at approximately 10:18 PM, defendants Larry Raisner and Roger Burns, both officers of the Barrett Township Police Department, initiated a traffic stop of Edward Rose III at the intersection of Route 191 and Green Chapel Lane in Paradise Township, Pennsylvania. (*Id.* at ¶¶ 3, 7.) Suspecting that Mr. Rose was driving under the influence, the officers arrested him and placed him in handcuffs. (*Id.* at ¶ 8.) At the time of the arrest, Mr. Rose became dizzy, fell down, and became nonresponsive. (*Id.* at ¶ 9.) CPR and defibrillation were unsuccessful, and after paramedics transported Mr. Rose to the local emergency room, he was pronounced dead at 11:08 p.m. (*Id.*)

At the time of the arrest, Officers Raisner and Burns were outside of their jurisdiction. (*Id.* at ¶ 10(c).) Mr. Rose asked for his heart medication while he was handcuffed, but he was denied. (*Id.* at ¶ 10(e).) He was kept in handcuffs during CPR and while he was being defibrillated. (*Id.* at ¶ 10(f).) The complaint implies that someone used a taser on Mr. Rose (*id.* ¶ 10(g)) and that medical treatment was improperly administered (*id.* at ¶ 10(h)).

Allegations that do not fit into a chronological narrative include initiation of criminal proceedings resulting in the death of Mr. Rose (*id.* at ¶¶ 25, 30); defendants' communication and publication of defamatory statements applicable to Mr. Rose (*id.* at ¶ 35); conspiracy to interrogate Mr. Rose and deprive him of his civil rights (*id.* at ¶ 38); emotional distress of plaintiff caused by defendants (*id.* at ¶¶ 41, 43–44); defendants' making of false statements about Mr. Rose (*id.* at ¶ 47); damage to plaintiff's reputation (*id.* at ¶ 50); negligence in hiring, employing, training, or promoting (*id.* ¶ 52); negligent administration of medical care (*id.* at ¶ 55); and plaintiff's loss of Mr. Rose's services, companionship, and contributions (*id.* at ¶ 61).

*(B) Procedural history*

Dolores M. Rose filed her complaint (Doc. 1) on August 14, 2009. No answers have been filed; all defendants responded with motions to dismiss. Defendants Barrett Township, Barrett Township Police Department, Larry Raisner, and Roger Burns moved to dismiss under Rule 12(b)(6) on October 23, 2009. (Doc. 10.) On October 26, defendant Barrett Township Volunteer Ambulance Corps, Inc. (VAC) moved to dismiss or in the alternative for a more definite statement. (Doc. 11). Defendants submitted supporting briefs (Docs. 12–14) and plaintiff filed briefs in opposition (Docs. 17–18); no reply briefs have been filed.

**II. Standard of Review**

The court's task on a Rule 12(b)(6) motion to dismiss for failure to state a claim is to "determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief." *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000). In doing so, all factual allegations and all reasonable inferences drawn therefrom are assumed to be true. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). The court, however, need not accept as true a complaint's "bald assertions" or "legal conclusions." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997). Thus, a Rule 12(b)(6) motion does not serve to question a plaintiff's well-pled facts, but rather tests the legal foundation of the plaintiff's claims. *United States v. Marisol, Inc.*, 725 F. Supp. 833, 836 (M.D. Pa. 1989).

The Supreme Court recently abrogated its longstanding decision in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), which had held that a complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court retired this "no set of facts" language in favor of a new standard: a plaintiff's obligation to state a claim for relief

3

under Rule 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As a result of *Twombly*, plaintiffs were required to nudge their claims "across the line from conceivable to plausible." *Id.* at 570. To state a claim that satisfies Fed. R. Civ. P. 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 555. "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 555 n.3). According to this standard, a court may dismiss a complaint if it fails to "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

Moreover, the Court's more recent decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), held that the pleading requirements of Rule 8 mark "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the complaint should be dismissed. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

**III. Discussion**

Plaintiff's complaint contains thirteen separate counts against the various defendants; listing each of the thirteen would be unnecessarily tedious. Instead, before

4

beginning an analysis of the claims and issues presented, the Court simply notes that plaintiff has filed suit against defendant Barrett Township Police Department both individually and as an agent of Barrett Township, and against defendants Raisner and Burns individually and as agents of the Barrett Township Police Department.

*(A) Matters affecting proof required and parties amenable to suit*

(1) Qualified immunity for officers sued in their individual capacity

The individual defendants Larry Raisner and Roger Burns have asserted the affirmative defense of qualified immunity, which is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Because of the risk of losing this entitlement, it is important to resolve questions of qualified immunity as early as possible in the litigation.

The "threshold question" for a court addressing a claim to qualified immunity is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Scott v. Harris*, 550 U.S. 372, 377) (2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (internal quotation marks omitted). Only if the court finds that a constitutional right has been violated does the inquiry proceed to the question of whether "the right was clearly established . . . in light of the specific context of the case." *Id.* (internal quotation marks omitted) (alteration in original).

Qualified immunity serves as a shield from suit if "a reasonable officer could have believed [the arresting officer's actions] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (internal quotation marks omitted) (second alteration in original). A law-enforcement official who

5

"reasonably but mistakenly conclude[s] that probable cause is present" is still entitled to immunity. *Id.* (internal quotation marks omitted). This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 229 (citing *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Because there is no dispute that Raisner and Burns were both police officers at the time of the incidents giving rise to the complaint in this matter, the claims against them in their individual capacities will be reviewed under the qualified-immunity standard.

(2) Merger of claims against municipal officers sued in their official capacities with claims against the municipality

When a public servant is sued "in his official capacity," a judgment against him "imposes liability on the entity that he represents provided . . . [that] the public entity received notice and an opportunity to respond." *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). An official-capacity suit is "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Accordingly, a suit against a municipal official is no different from a suit against the municipality itself. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Monell*, 436 U.S. 690 n.55) (explaining that a suit against a state official is equivalent to a suit against the State itself); *id.* at 71 (holding that officials acting in their official capacities are not "persons" under § 1983).

As a party to this suit, Barrett Township has received notice of the complaint and has availed itself of the opportunity to respond. To the extent that plaintiff makes claims against Raisner and Burns in their official capacities, those claims should be treated as claims against Barrett Township. To the extent that this results in duplicate claims against the Township, it is recommended that those claims agains Raisner and Burns be dismissed.

6

### (3) Definition of "person" under 42 U.S.C. § 1983

A local government is a "person" subject to suit under § 1983. *Johnson v. City of Erie*, 834 F. Supp. 873, 878 (W.D. Pa. 1993) (citing *Monell*, 436 U.S. at 690). However, "each governmental sub-unit or department" is not a person. *Id.*; *see Young v. Keohane*, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)) (holding the federal Bureau of Prisons not a person under § 1983).

Since the Barrett Township Police Department is a "sub-unit or department" of Barrett Township and "is merely a vehicle through which the city fulfills its policing functions," it is not a person under § 1983, and cannot be held liable for civil damages. *Johnson*, 834 F. Supp. at 878–79 (citing *Williams v. Dayton Police Dep't*, 680 F. Supp. 1075, 1080 (S.D. Ohio 1987); *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 826 (D.N.J. 1993)). It is recommended that all claims under § 1983 against the Barrett Township Police Department be dismissed.

### (B) Municipal liability under § 1983

A municipality cannot be held liable for the acts of its agents or employees under § 1983 based on a respondeat superior theory. *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). To support liability under § 1983, a plaintiff must prove that the injuries alleged in the complaint were the result of a municipal "policy or custom." *Id.* at 694. Although the Court appeared to collapse this bifurcation in a 1986 decision, subsequent Supreme Court jurisprudence has shown that either a "policy" or a "custom" may render a municipality subject to suit under § 1983. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (holding that § 1983 liability attaches "where—and only where—a deliberate choice to follow a course of action is made" from several choices by the policymaker with final decision-making power); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (making use of the "policy or custom" language); *see also*

*Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (stating that plaintiff must show "either affirmative proclamation of policy or acquiescence in a well-settled custom").

In her brief opposing defendants' motion to dismiss, plaintiff incorrectly recites the relevant standard for proper statement of a § 1983 claim. (Doc. 17 at 4.) She erroneously cites *Wagner v. Waitlevertch*, 774 A.2d 1247, 2001 Pa. Super. 100, for the § 1983 standard. *Id.* at ¶ 9 (citing *Tunstall v. Office of Judicial Support of Court of Common Pleas*, 820 F.2d 631, 633 (3d Cir. 1987)). According to these cases, a § 1983 claim requires the plaintiff to show that the person whose conduct at issue was acting under color of state law and that the conduct effected a deprivation of constitutional rights. *Tunstall*, 820 F.2d at 633. However, this standard was never applied to municipalities. Both *Wagner* and *Tunstall* addressed claims brought against individuals. Further, the case on which *Tunstall* relies, *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978), was decided before *Monell*. Jurisprudence in the Supreme Court and the Third Circuit consistently follows the *Monell* line of cases when analyzing municipal liability under § 1983, making *Wagner*, *Tunstall*, and *Flagg Bros.* irrelevant to the case at bar.

(1) Liability for municipal policy

Municipal liability under § 1983 for a "policy" may attach if a "'decisionmaker possess[ing] final authority to establish municipal policy . . .' issues an official proclamation, policy, or edict." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original)). "[A] single decision" made by the "properly constituted legislative body" of a municipality may be enough to establish policy, *Pembaur*, 475 U.S. at 480, as may an act of a policymaker even in the absence of a formally announced rule, *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 417 (1997) (Souter, J., dissenting)).

8

Plaintiff's complaint includes no allegations of any policies or policymakers involved in the events complained of. The averments of the complaint in all the § 1983 claims relate only to Officers Raisner and Burns. There simply is no support for a claim of municipal policy liability.

(2) Liability for municipal custom

Municipal "custom" can be established in a number of different ways. A course of conduct can be considered a custom "when, though not authorized by law, 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law." *Beck*, 89 F.3d at 971 (quoting *Andrews*, 895 F.2d at 1480) (alteration in original). Custom may alternatively be established by showing that "a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

Support for a showing of municipal custom is in the form of conclusory allegations that defendant Barrett Township was "negligent, careless, reckless[,] and/or unlawful . . . in the hiring, employing, training[,] and/or promoting [of] the . . . employees who were responsible and obligated to properly execute their duties as police" (Doc. 1, ¶ 52(d), and that "[d]efendants failed to adopt, promulgate[,] and enforce policies and procedures to effectuate the observation and enforcement of citizens' Civil Rights [sic]" (*Id.* at ¶ 52(e)). These allegations have some conceivable connection to the claims that Mr. Rose "was handcuffed although he posed no threat and was cooperative" (*Id.* at ¶ 10(d)) and "was denied his heart medication upon request while handcuffed" (*Id.* at ¶ 10(e)), and that Mr. Rose's arrest involved "the improper use of handcuffs and improper use of a taser" (*Id.* at ¶ 10(g)).

Yet the link between these allegations and the putative municipal custom is not plausible. The complaint is rife with the sort of "labels and conclusions" that the Supreme

9

Court has recently, and explicitly, held inadequate. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff claims that Mr. Rose "posed no threat" but offers no "further factual enhancement," *id.* at 1949 (quoting *Twombly*, 550 U.S. at 557), to undergird this claim. Likewise, plaintiff makes an unadorned accusation that the use of handcuffs and a taser was "improper." These "naked assertions," *id.*, fail to make plausible any connection between the alleged improper training and the alleged improper behavior of Officers Raisner and Burns. The complaint's nonconclusory allegations are insufficient to support a theory that deliberate indifference, as evidenced by Barrett Township's customary failure to train its officers, directly resulted in Mr. Rose's injuries and death—by itself a flaw that dooms the claim, since a showing of causation is a necessary component of a § 1983 claim against a municipality. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Because plaintiff's complaint contains no averments that, under any reasonable reading, would support a finding of a municipal policy or custom that caused Mr. Rose's injuries and death, it is recommended that Counts I through III of the complaint be dismissed as to Barrett Township.

### (C) Individual defendants' liability under § 1983

Plaintiff's complaint includes claims against Officers Raisner and Burns in their individual capacities. As discussed above, because Raisner and Burns were officers of the law, they are entitled to qualified immunity from suit.

Looking at the facts as alleged in the complaint in the light most favorable to the plaintiff, there is no cognizable violation of any constitutional right. Plaintiff purports to bring claims under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments, all of which are lacking support in the complaint. For the reasons that follow, it is recommended that Counts I through III of the complaint be dismissed as to Raisner and Burns.

(1) First Amendment

There are no allegations of fact that would remotely tend to support a First Amendment claim. The First Amendment protects a citizen's freedom of speech, freedom of religion, and freedom of association, and there are simply no facts in the complaint relevant to any of these issues.

(2) Fourth Amendment

Establishing a violation of the Fourth Amendment sufficient to support a § 1983 claim requires the plaintiff to show that (1) a seizure occurred and (2) the seizure was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989). Mr. Rose was subjected to a traffic stop and then arrested; there is no question that these actions constitute a seizure. *Colorado v. Bannister*, 449 U.S. 1, 4 n.3 (1980) (citing, *e.g.*, *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)); *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975) (citing, *e.g.*, *Davis v. Mississippi*, 394 U.S. 721 (1969)).

The facts as stated in the complaint do not support a finding that the seizure was unreasonable. As the complaint states, Mr. Rose was arrested on suspicion of driving under the influence.[1] The conclusory statements that defendants lacked probable cause and that Mr. Rose posed no threat do not enter the analysis, as these statements are legal

---

[1] Although plaintiff claims in her brief opposing defendants' motion to dismiss that Mr. Rose was not intoxicated, she acknowledges that the autopsy report indicated that his ethanol level was 0.04%—halfway to the "per se" legal limit in Pennsylvania. *See* Doc. 18-2 at 3 (indicating a femoral blood-alcohol level of 0.03% and a vitreous alcohol level of 0.04%); 75 Pa. Stat. Ann. § 3802(a)(1) (2010) (forbidding a person from operating a moving vehicle "after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving"); *id.* § 3802(a)(1) (forbidding a person from operating a moving vehicle with a blood-alcohol concentration of 0.08% or greater).

11

conclusions rather than averments of fact. A suspicion that an arrestee was driving under the influence is a reasonable justification for arrest.

Even assuming for the sake of argument that Mr. Rose's arrest was somehow unreasonable, the qualified-immunity analysis proceeds to the question of whether Mr. Rose's Fourth Amendment right was "clearly established" in the "specific context of the case." *Scott v. Harris*, 550 U.S. 372. 377 (2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (internal quotation marks omitted). The "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful," *Saucier*, 533 U.S. at 202, and even a mistaken but reasonable conclusion that probable cause is present will entitle an officer to immunity, *Hunter v. Bryant*, 502 U.S. 224, 227 (1997).

In this case, the facts show that at the time of arrest, Mr. Rose became dizzy, fell down, and became nonresponsive. Since these developments occurred shortly after Officers Raisner and Burns pulled Mr. Rose over and arrested him on suspicion of driving under the influence, it requires no stretch of the imagination to arrive at the hypothesis that at the time of the traffic stop, Mr. Rose was already experiencing health problems that affected his ability to control his vehicle. If this were the case, Mr. Rose may indeed not have been driving under the influence; rather, his apparent intoxication may have been the result of the same condition that caused him to collapse upon arrest. The arresting officers may then have been mistaken about the presence of probable cause for arrest, but lacking any information about the actual cause of Mr. Rose's apparent condition, the mistake would have been reasonable.[2]

---

[2]The purpose of this hypothetical exercise is not to postulate facts that are not in the record, but rather to show the uncertainty of the situation and to circumscribe the bounds of reasonableness in this case. *Cf. Scott v. Harris*, 550 U.S. 372, 385 n.11 (responding to assertions from the dissent that the Court was making "factual assumptions" and clarifying that the purpose of the discussion was to explore uncertainties).

Because the defendant officers' seizure of Mr. Rose was reasonable, or alternatively, because the officer's conclusion that there was probable cause for arrest was reasonably mistaken, the complaint does not allege a cognizable Fourth Amendment claim.

### (3) Fifth Amendment

The Fifth Amendment has never been held to apply to state action; rather, the Fifth Amendment is a limitation on the power of the federal government. Because the defendant officers were officers of the State of Pennsylvania, not the United States, the complaint does not allege a cognizable Fifth Amendment claim.

### (4) Sixth Amendment

The Sixth Amendment provides a variety of protections to a defendant in a criminal case. The complaint contains no plausible allegations that Mr. Rose was ever prosecuted by the defendant officers, and thus alleges no cognizable Sixth Amendment claim.

### (5) Fourteenth Amendment

In part, the Fourteenth Amendment to the United States Constitution guarantees due process of law before a state may effect any deprivation of life, liberty, or property. U.S. Const. Amend. XIV. Although it was not clear from the Amendment's inception what new rights, if any, the Fourteenth Amendment would grant, two doctrinal lines developed: one forging a right to procedural due process; the other a right to substantive due process. *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319 (1976) (articulating the balancing test for alleged procedural due process violations); *Lochner v. New York*, 198 U.S. 45 (1905) (invoking a substantive-due-process theory to find a fundamental right to

contract), *overruled by Ferguson v. Skrupa*, 372 U.S. 726 (1963), *and Day-Brite Lighting Inc. v. Missouri*, 342 U.S. 421 (1952).

However, the due-process protections of the Fourteenth Amendment are not available in every instance. When another Amendment "'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide" for analyzing the claim. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989); *cf. Minor v. Happersett*, 88 U.S. 162, 175 (1874) (indicating that the "several provisions of the Constitution must be construed in connection with the other parts . . . and in the light of surrounding circumstances").

The only claim of constitutional right in the complaint that merited any discussion was made under the Fourth Amendment, a claim that, as explained above, fails. As a result, there is no separate claim to be made under the Fourteenth Amendment against the individual defendants. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (holding substantive-due-process analysis inappropriate if a claim is "covered by" the Fourth Amendment).

Even were there a separately articulable claim of substantive due process to be brought under the Fourteenth Amendment, plaintiff would have to show that defendants' conduct was so arbitrary as to shock the conscience. *Id.* at 846. Plaintiff's complaint makes out no such case. Defendants' traffic stop and arrest of Mr. Rose, even without probable cause, even if Mr. Rose were handcuffed and denied heart medication, was not so "brutal" and "offensive" as to be incompatible with "traditional ideas of fair play and decency." *Id.* at 847–48 (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)). Action that is arbitrary in the constitutional sense points toward liability "only at the ends of the tort law's spectrum of liability," *id.* at 848, an extreme standard of outrageous conduct that, even under the most favorable reading, plaintiff's complaint fails to allege.

*(D) Claims again Barrett Township Volunteer Ambulance Corps*

None of the claims against VAC were predicated on federal law. Dismissal of the federal claims against Barrett Township and Officers Raisner and Burns would constitute dismissal of all federal claims. Since none of plaintiff's claims under § 1983 can withstand a Rule 12(b)(6) motion to dismiss, the court is without original jurisdiction over the remaining claims, including those against VAC. The federal statute granting pendent jurisdiction over state-law claims, 28 U.S.C. § 1767, allows dismissal of pendent claims at a court's discretion if there are no remaining federal claims in the complaint. *Id.* § 1767(c). Dismissal of the pendent state-law claims would obviate any need directly to discuss VAC's motion to dismiss.

**IV. Conclusion**

It is recommended, therefore, that plaintiff's claims under 42 U.S.C. § 1983 be dismissed. Because there would then be no remaining federal claims in the complaint, it is further recommended that plaintiff's pendent claims be dismissed under 28 U.S.C. § 1767(c), and thus that plaintiff's complaint be dismissed in full.

s/ William T. Prince<br>
William T. Prince<br>
United States Magistrate Judge

May 27, 2010